UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH A. SHERIDAN,

                     **Plaintiff,**

- *against* -                     07 Civ. 3313 (SCR) (LMS)

CARL R. MARIUZ, PATRICIA T. MARIUZ A/K/A/       REPORT AND
PATRICIA SHERIDAN, MARIUZ PROPERTY          RECOMMENDATION
MANAGEMENT, RTBK OF THE HUDSON,
DEFENDANTS UNKNOWN,

                     **Defendants.**

TO:    THE HONORABLE STEPHEN C. ROBINSON,
        UNITED STATES DISTRICT JUDGE

*Pro se* Plaintiff Joseph A. Sheridan (herein, "Plaintiff") commenced this action against Defendants Patricia T. Mariuz, Plaintiff's ex-wife, and Patricia Mariuz's former husband, Carl R. Mariuz (herein collectively, "Defendants"), both also proceeding *pro se*, for, *inter alia*, alleged acts of conspiracy, mail fraud, wire fraud, and obstruction of justice under the civil remedy provision of the Racketeering Influenced and Corrupt Organizations Act, (herein, "RICO"), 18 U.S.C. §§1961, *et seq*. See Docket #1, Complaint (herein, "Comp.") at ¶15. In his Complaint Plaintiff also names as defendants several John Doe individuals and two business entities allegedly owned and operated by Carl Mariuz. Id. In addition to the civil RICO claim the Plaintiff asserts against the Defendants, the Plaintiff also asserts state law claims for unjust enrichment, "tortuous interference intentionally inflicted harm (sic)," fraud and conspiracy, and emotional distress, under the Court's grant of original diversity jurisdiction, 28 U.S.C. §1332. See Comp. at ¶¶6; 17-24. Plaintiff contends that the rule of complete diversity of citizenship

1

among all plaintiffs and all defendants does not apply in a case such as this where a civil complainant has no other recourse but to assert his or her claims in federal court.  See Comp. at ¶6.  Plaintiff asserts that he is a New York resident, that Defendant Carl Mariuz is a New York resident, that the purported business entities owned and operated by Carl Mariuz, Mariuz Property Management and RTBK of the Hudson, are New York-based business entities, and that Defendant Patricia Mariuz is a New Jersey resident.  See Comp. at ¶¶1-3.

Defendant Carl Mariuz has filed a motion to dismiss the Plaintiff's Complaint for a lack of subject matter jurisdiction, for failure to state a claim, and for failure to comply with the applicable statute of limitations.  See Docket #3, Defendant Carl Mariuz's Motion to Dismiss.  Defendant Patricia Mariuz has joined in Defendant Carl Mariuz's motion to dismiss in all respects.  See Docket #15, Affirmation of Service on Plaintiff Joseph Sheridan.  After reading all of the *pro se* filings submitted in connection with this case, I conclude, and respectfully recommend that Your Honor should conclude, that the Defendants' motion to dismiss should be granted and that the Plaintiff's Complaint should be dismissed with prejudice.[1]

---

[1] It appears from the docket sheet in this case that the Plaintiff has not effected service of process on either of the business entities named as Defendants in this case.  In the absence of evidence of service of process the Court does not have jurisdiction over these entities as neither of them has been made party to this suit.  See, e.g., Steele v. Hempstead Pub, 305 A.D.2d 401, 402 (2d Dep't 2003) (discussing service of process on sole proprietorship).  As more than 120 days have elapsed since the filing of this action and no affidavit of service of process has been filed with the Court, dismissal of these entities for lack of service of process would be appropriate under FED. R. CIV. P. 4(m).  See Zapata v. City of New York, 502 F.3d 192, 196-97 (2d Cir. 2007).  For the reasons discussed herein, however, because these proposed defendants allegedly share common state residency with the Plaintiff, the Court lacks proper subject matter jurisdiction over the Plaintiff's claims against these proposed Defendants and his claims against these entities should be dismissed for lack of subject matter jurisdiction.  See infra at pp. 16-17.

## BACKGROUND

A.    Materials Considered by the Court and Standard of Review

The following facts are drawn from the Plaintiff's Complaint and the exhibits attached thereto. See Cortec Industries Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). In a case such as this where all of the parties are proceeding *pro se* the Court must be attentive to the fact that construing the *pro se* Plaintiff's pleadings too broadly may adversely impact the *pro se* Defendants' rights. Thus, while the Court reads the Plaintiff's Complaint liberally, the Court also construes the Defendants' motion to dismiss liberally so as to raise the strongest arguments that it suggests. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972); see also McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) ("[W]e read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' ") (quotation omitted). Additionally, because the Court must be mindful of the propriety of its own subject matter jurisdiction and because the Court may call its own subject matter jurisdiction into question *sua sponte*, the undersigned will conduct an independent analysis of whether there is proper subject matter jurisdiction over any of the state law claims raised by the Plaintiff. See Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 702 (1982) (explaining that both a federal appellate court and a federal district court may raise the issue of subject matter jurisdiction on its own initiative). In conjunction with these general rules, the Court assumes the facts contained in the Plaintiff's Complaint to be true and offers no opinion on the merits of any the facts stated therein. See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

B.     Plaintiff's Complaint

Plaintiff's Complaint contains a series of grievances against his former wife, and her former husband, accusing both of them of conspiring to deprive the Plaintiff and his three children of the full amount of child support the Plaintiff was allegedly entitled to receive and of conniving to cause the Plaintiff "emotional harm, pain and suffering and mental anguish . . . ." See Comp. at ¶4.  Plaintiff alleges that the Defendants achieved their goal of depriving him of the maximum amount of possible child support payments by improperly transferring property from Patricia Mariuz to Carl Mariuz.  See Comp. at ¶10.  Plaintiff also speculates that Carl Mariuz accepts rent from Patricia Mariuz and that Carl Mariuz purchased property from Patricia Mariuz while they were still married in furtherance of their scheme to reduce the amount of child support payments owed to the Plaintiff.  Id.

In addition to asserting causes of action against the Defendants for conspiring to deprive him of child support payments, Plaintiff also asserts causes of action against the Defendants for conspiring to defraud the State of New Jersey and the United States Government.  See Comp. at ¶¶10, 12.  Plaintiff suggests that the Defendants concealed income they received from the sale of real property in effort to increase the amount of social services both of the Defendants allegedly receive and that Carl Mariuz has improperly collected disability insurance benefits and worker's compensation benefits.  See Comp. at ¶12.  Throughout his Complaint the Plaintiff claims that Patricia Mariuz "defrauded the Court" – the undersigns construes this to refer to a state court – engaged in acts of perjury, and disregarded various court orders.  See Comp. at ¶10; see also Comp., "Exhibit List and Documents of Criminal Activity" at pp. 2-3.  Plaintiff also alleges that Patricia Mariuz "victimized" their children during their child custody battle and that Carl Mariuz

assaulted the Plaintiff and has made "more than a dozen threats of violence, revenge and warnings in an attempt to intimidate [the] Plaintiff . . . ." See Comp. at ¶14.

Plaintiff concludes that these factual allegations state six separate causes of action. See Comp. at ¶¶15-24. Plaintiff asserts that the acts of Patricia Mariuz and Carl Mariuz, along with the actions and participation of the business entities allegedly owned and operated by Carl Mariuz, constitute a pattern of racketeering activity in violation of RICO, 18 U.S.C. §1962(c), and are colorable as civil claims under RICO's private right of action provision, 18 U.S.C. §1964(c). See Comp. at ¶¶15-16. Plaintiff specifies that the predicate violations establishing his RICO claim are mail fraud, wire fraud, obstruction of justice, "others that will become known during discovery process," and acts of violence and threats of violence, see Comp. at ¶6, and that Mariuz Property Management and RTBK of the Hudson "are entities engaged in, or the activities of which, affect interstate commerce," see Comp. at ¶16. Plaintiff's second cause of action alleges that the Defendants have "improperly enrich[ed] themselves to the detriment of the Plaintiff . . . by their wrongful conduct," see Comp. at ¶17, and his third and fourth causes of action allege that the Defendants have engaged in acts of conspiracy, fraud, and "tortuous interference (sic)," see Comp. at ¶¶18-21. Lastly Plaintiff contends that the "Defendants willfully and wrongfully continue their acts of fraud, conspiracy and deception," and that "[he] has suffered emotional distress along with his children," see Comp. at ¶¶22, 23.[2] Plaintiff seeks "three-fold damages, costs, interest, attorney's fees, injunctive relief and punitive wrongful damages up to ten million dollars . . . ." See Comp. at ¶24.

---

[2] Although Plaintiff references alleged damages sustained by his children, Plaintiff has only commenced this action in his own name.

C.    Defendants' Motion to Dismiss

In lieu of an Answer Defendant Carl Mariuz has filed a motion to dismiss seeking dismissal of the Plaintiff's Complaint on several grounds, including improper subject matter jurisdiction and failure to state a claim.  See Docket #3, Carl Mariuz's Notice of Motion.  In his accompanying affidavit, Carl Mariuz alleges that the $75,000 statutory amount in controversy has not been met, that the Plaintiff has failed to identify any losses or damages attributable to the Defendants' alleged wrongdoing, and that the Plaintiff lacks standing to bring a civil lawsuit complaining of disability insurance fraud, worker's compensation fraud, or insurance fraud.  See Docket #3, Notice of Motion, Affidavit (herein, "Carl Mariuz Aff.") at ¶¶3-5.  In his affidavit Carl Mariuz also denies any knowledge of RTBK of the Hudson and claims that Mariuz Property Management does not engage in interstate commerce.  See Carl Mariuz Aff. at ¶7.  Defendant Patricia Mariuz has served notice on the Plaintiff that she joins Defendant Carl Mariuz's motion to dismiss the Plaintiff's Complaint in its entirety.  See Docket #15.

An initial pretrial conference with the Plaintiff and Defendant Carl Mariuz present *in personam* was held before the undersigned on January 17, 2008, at which time a briefing schedule was set for the instant dispositive motion.  For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Defendants' motion to dismiss the Plaintiff's civil RICO claim for failure to state a claim should be granted and that the Defendants' motion to dismiss the Plaintiff's remaining state law claims for a want of subject matter jurisdiction should also be granted.

**DISCUSSION**

A.    <u>Motion to Dismiss Standard of Review</u>

Defendants have filed a motion to dismiss challenging both the propriety of the Court's subject matter jurisdiction and the propriety of the allegations contained within the Plaintiff's Complaint. <u>See</u> Carl Mariuz Aff. at ¶2. These arguments raise independent grounds in support of dismissal of the Plaintiff's Complaint. Defendants' motion to dismiss for want of subject matter jurisdiction is evaluated under FED. R. CIV. P. 12(b)(1), and Defendants' motion to dismiss for failure to state a claim is evaluated under FED. R. CIV. P. 12(b)(6). Each standard will be explained separately.

    1.    Rule 12(b)(1) Motion to Dismiss for a Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, which is to say that a federal court must have valid subject matter jurisdiction over a party's claim or claims in order for it to adjudicate the case or controversy. <u>See</u>, <u>e.g.</u>, <u>Marshall v. Marshall</u>, 126 S. Ct. 1735, 1741 (2006); <u>Gottlieb v. Carnival Corp.</u>, 436 F.3d 335, 337 (2d Cir. 2006) ("federal courts are courts of limited jurisdiction which thus require a specific grant of jurisdiction.") (quotation omitted). Common grants of federal subject matter jurisdiction include diversity jurisdiction, 28 U.S.C. §1332, federal question jurisdiction, 28 U.S.C. §1331, and in certain circumstances, supplemental jurisdiction, 28 U.S.C. §1367(a). As has been noted many times, the Federal Rules of Civil Procedure neither create nor deny federal subject matter jurisdiction, <u>see</u> <u>Owen Equipment & Erection Co. v. Koger</u>, 437 U.S. 365, 370 and n.7 (1978), and the court itself is under an obligation to address issues of subject matter jurisdiction *sua sponte*, <u>see</u> <u>Cave v. E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 250 (2d Cir. 2008).

The Plaintiff bears the burden of establishing by a preponderance of the evidence that there exists a colorable basis of proper subject matter jurisdiction. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006). Although the Plaintiff's well pled allegations are assumed to be true on a motion to dismiss, id., a federal court may resolve factual disputes on a motion to dismiss for a lack of proper subject matter jurisdiction by considering evidence extrinsic to the complaint in an effort to ensure that it is the proper forum in which a dispute can be heard, see State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007). Should a court decide that it lacks the "statutory or constitutional power to adjudicate" a dispute, it may dismiss the suit for a lack of subject matter jurisdiction. See Aurecchione v. Schoolman Transp. Sys., 426 F.3d 635, 638 (2d Cir. 2005).

2.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

When considering a defendant's Rule 12(b)(6) motion to dismiss, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). Under this standard, "[d]ismissal is inappropriate unless it appears beyond a doubt that the plaintiff can prove no set of facts which entitle him or her to relief." Id. A Rule 12(b)(6) motion to dismiss thus challenges the legal sufficiency of the Plaintiffs' averments and only should be granted when "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief," Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Put another way, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law," Neitzke v. Williams, 490 U.S. 319, 326 (1989), and granting a Rule 12(b)(6) motion to dismiss is considered a ruling on the merits of the Plaintiffs' claims, see Alliance for Envtl. Renewal, Inc.

v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006).

B.      Plaintiff's Complaint

     1.      Civil RICO Claim

          a.      Pleading Requirements

Plaintiff's challenges to the actions of Defendants Carl Mariuz and Patricia Mariuz are disputes arising out of his previous marriage to, and separation from, Defendant Patricia Mariuz. Plaintiff attempts to bring these domestic relations disputes before this Court through the RICO civil private right of action provision, 18 U.S.C. §1964(c). The federal RICO statute, however, is a complex statutory scheme that mandates that specific pleading requirements must be met before a civil complainant can bring suit. These robust threshold requirements are predicated on the fact that a RICO claim can have a profound impact on a defendant. See, e.g., Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007) ("RICO . . . is an unusually potent weapon . . .") (quotation omitted); Feirstein v. Nanbar Realty Corp., 963 F. Supp. 254, 257 (S.D.N.Y. 1997) ("alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides . . .") (quotation omitted). In light of these concerns the Second Circuit has explicitly cautioned the district courts to be cognizant of the "creative pleading" a plaintiff may use in an effort to massage a state law dispute into a federal racketeering claim. See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 116 (2d Cir. 2003).

     This action is not the first action in which a civil complainant seeks to present and litigate domestic relations issues as federal RICO claims. See, e.g., Capasso v. Cigna Ins. Co., 765 F. Supp. 839 (S.D.N.Y. 1991); Pohlot v. Pohlot, 664 F. Supp. 112 (S.D.N.Y. 1987); Dangerfield v. Merrill Lynch, 02 Civ. 2561 (KMW)(GWG), 2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003).

While there is no *de jure* bar to asserting domestic relations disputes as civil RICO claims under 18 U.S.C. §1964(c), meeting the following required RICO pleading elements in such a factual context is quite difficult.

In order to state a valid civil RICO claim, a plaintiff must allege that a person who was "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce" conducted or participated in the "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §1962(c). The RICO scheme provides technical statutory definitions for each of these terms, including "racketeering activity," "person," "enterprise," and "pattern of racketeering activity." 18 U.S.C. §1961(1), (3)-(5). The Supreme Court has held that a RICO person – that is the individual who directs the RICO enterprise – must be distinct from the RICO enterprise itself, see Cedric v. Kushner Promotions, Ltd. v. King, et. al., 533 U.S. 158, 161 (2001), and that a RICO enterprise must be "separate and apart from the pattern of [racketeering] activity in which it engages," United States v. Turkette, 452 U.S. 576, 583 (1981). The RICO statute defines a "pattern of racketeering activity" as including "any act which is indictable" under a series of federal criminal laws, including mail fraud, wire fraud, obstruction of justice, and witness tampering, and a RICO plaintiff bears the dual burden of pleading both the "pattern of racketeering activity" and the substantive violations of federal criminal law that comprise the pattern of racketeering activity. See, e.g., Bank of China v. NBM LLC, 359 F.3d 171, 176-77 (2d Cir. 2004) (explaining that proof of underlying criminal action is a part of establishing a civil RICO claim). Some of the substantive federal criminal violations that can comprise a pattern of racketeering activity, such as mail fraud and wire fraud, are subject to FED. R. CIV. P. 9(b)'s heightened pleading standard governing the pleading of

10

allegations of fraud. See Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999). Additionally, a plaintiff must adequately allege that the RICO person or persons participated or directed the affairs of the enterprise and that the enterprise's affairs affect interstate or foreign commerce or that the enterprise itself affects interstate or foreign commerce. United States v. Roberston, 514 U.S. 669, 671-72 (1995).

The Supreme Court has grafted additional pleading requirements on to the fundamental statutory pleading requirements a plaintiff must satisfy in order to state a colorable civil RICO claim. Among these additional requirements is a proximate cause showing that requires a plaintiff to allege that he or she was "injured in his [or her] business or property by reason of a violation of [18 U.S.C. §1962]." Holmes v. Sec. Investors Prot. Corp., 503 U.S. 258, 268 (1992); see also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) (explaining Holmes as requiring more than "but for" causation). This proximate cause requirement, in turn, is but one of the three required elements a plaintiff must establish to show that he or she has statutory standing – also referred to as RICO standing – to bring a civil RICO claim. See Lerner, 318 F.3d at 120 (explaining that the three elements of statutory standing are (1) a violation of §1962, (2) an injury to the plaintiff's business or property, and (3) a proximate cause showing between the statutory violation and the injury) (quoting Commercial Cleaning Serv., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001)).

      b.     Plaintiff's Civil RICO Claim

In lieu of a lengthy analysis evaluating the sufficiency of the Plaintiff's pleadings and assessing whether he has adequately plead the existence of RICO persons, a RICO enterprise, and a pattern of racketeering activity, I conclude, and respectfully recommend that Your Honor

should conclude, that the Court need only analyze and conclude that the Plaintiff cannot adequately establish the necessary proximate cause linkage between the alleged RICO violations committed by the Defendants and the alleged injury he claims he sustained as a result of these violations. I therefore conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's civil RICO claim should be dismissed for failure to state a claim under Rule 12(b)(6).

In order to satisfy the proximate cause pleading requirement, a plaintiff must show that his or her injuries occurred "by reason of" the predicate acts committed in the course of the pattern of racketeering activity. Lerner, 318 F.3d at 123 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994)). In this instance, Plaintiff advances that Defendants' alleged acts of mail fraud, wire fraud, and obstruction of justice committed during the course of a state court proceeding resulted in him receiving a lesser "Marital Settlement Agreement." See Comp. at ¶11. This theory that the Plaintiff relies upon – that he suffered injury because of the fraud perpetrated on a non-party to this case – has been discredited by the Supreme Court and the Second Circuit and has been held to be insufficient to establish proximate causation as a matter of law. See Anza, 547 U.S. at 457-58; Lerner, 318 F.3d at 123. In both Anza and Lerner, the Supreme Court and the Second Circuit respectively explained that compensable RICO damages must flow directly from the commission of the predicate RICO acts themselves and cannot be the result of an intermediary's actions that may have be induced or caused by the alleged RICO activity. See Anza, 547 U.S. at 459 (highlighting how "attenuated connections" between alleged RICO violations and injuries do not establish proximate cause). As was the case in both Anza and Lerner, it is entirely possible in this case that the Plaintiff

would have received the same marital settlement amount regardless of whether the alleged RICO acts occurred because the decision that allegedly lead to the Plaintiff's injury was made by a neutral third-party; Plaintiff has failed to offer and has not otherwise pled how the Defendants' alleged RICO activity definitively caused him to receive a lesser "marital settlement award."

Other courts within this district that have been presented with similar domestic relations disputes fashioned as civil RICO claims have also emphasized that a plaintiff's "mere expectation of a favorable decree awarding [him or her] a share of . . . assets in [a] state court matrimonial action does not constitute a property interest protected under RICO." Pohlot, 664 F. Supp. at 116; Capasso, 765 F. Supp. at 842 (relying on Pohlot). Similar to the claim in Pohlot, which was based upon an alleged fraud committed by the defendants that was alleged to have resulted in a lesser marital award to the plaintiff, the claim in the instant case is predicated upon an assumption that a larger marital settlement award could have been awarded to the Plaintiff had the Defendants not committed the alleged RICO activity. 664 F. Supp. at 116. Similar to the dismissal of the RICO claim in Pohlot due to the absence of a cognizable property interest protected by the RICO statute, the RICO claim in this case should also be dismissed due to the similar absence of a protected property interest under the terms of the RICO statute. Id.

In addition to these pleading defects, the undersigned also concludes that the Plaintiff's Complaint does not sufficiently plead whether the Defendants' alleged pattern of criminal activity "amount[s] to or pose[s] a threat of continuing criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). This continuity of criminal activity requirement – which is also a requirement of pleading a valid civil RICO claim – must be "satisfied either by showing a 'closed-ended' pattern [of criminal activity] – a series of related

13

predicate acts extending over a substantial period of time – or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Int'l Adoption Agency, et al., 2008 WL 706580, at *4 (2d Cir. Mar. 18, 2008). Plaintiff's perfunctory assertion that the Defendants committed some criminal activity at some point after his divorce from Defendant Patricia Mariuz neither forms an adequate basis of an open-ended pattern of criminal activity nor a sufficient basis of a closed-ended pattern of criminal activity spanning a substantial period of time. Id. at *13 (noting that a closed-ended pattern of criminal activity usually must last for more than two years).

     A review of the Plaintiff's pleading of the underlying predicate RICO violations of mail fraud and wire fraud also leads me to conclude and respectfully recommend that the heightened pleading specifications required by Rule 9(b) of the Federal Rules of Civil Procedure have not been met in this case. See Spool, 2008 WL 706580, at *15-16. Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Pursuant to Second Circuit case law addressing the pleading of claims of mail fraud and wire fraud under Rule 9(b), a plaintiff must "specify the statements [he or she] claims were false or misleading, give particulars as to the respect in which [he or she] contend[s] the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Moore, 189 F.3d at 173. A cursory review of the Plaintiff's Complaint leads me to conclude that the Plaintiff's Complaint fails to comport with these heightened pleading standards. Plaintiff only avers that the Defendants' "actions constitute a 'criminal enterprise' [u]sing State and Interstate wires, U.S. Mail and Interstate transportation

in aid of racketeering enterprises and obstruction of justice (18 USCS § 1952) (sic)." See Comp. at ¶7. This attempt to plead mail fraud and wire fraud, however, is only a recitation of some of the statutory language employed by the RICO statute and is otherwise devoid of any factual specificity of when the alleged fraud was made, who perpetrated the fraud, or what about the contents of the communications was fraudulent and how such fraudulent information caused the Plaintiff to suffer injury. Sparse pleading composed only of statutory terminology is insufficient to state a claim for relief either under the traditional pleading requirements of Rule 12(b)(6) and 8(a) or under the heightened pleading requirements of Rule 9(b). Spool, 2008 WL 706580, at *16-17.

Finally it should be noted that Plaintiff cannot predicate his civil RICO claim on allegations of criminal activity that fall outside of the scope of criminal activity delineated in 18 U.S.C. §1961. See Spool, 2008 WL 706580, at *4 ("The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in §1961(1) . . ."). Plaintiff's suggestion that the Defendants have committed welfare fraud, insurance fraud, worker's compensation fraud, and other acts of "violence [and] threats of violence," therefore offer no valid ground upon which he can base his civil RICO claim. Plaintiff's additional argument that the Defendants committed obstruction of justice is equally unhelpful to his civil RICO claim as the Second Circuit has held that allegations of obstruction of justice must occur during the course of a federal proceeding in order to be cognizable in a federal civil RICO cause of action; here, Plaintiff appears to allege that the Defendants committed obstruction of justice in the course of a state court proceeding. See O'Malley v. New York City Trans. Auth., 896 F.2d 704, 707 (2d Cir. 1990) ("To constitute an offense under [the obstruction of justice] statute, the

15

act must relate to a proceeding in a federal court of the United States.").

    c.   Nature of Order of Dismissal

Although the practice in this Circuit and this District is to dismiss a Complaint for failure to state a claim under Rule 12(b)(6) without prejudice to re-file, it appears to the undersigned that the Plaintiff cannot overcome the defects concerning the proximate cause showing identified above by re-pleading his averments in a more precise or detailed fashion because his theory of RICO liability is defective as a matter of law. See, e.g., See Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (noting that although a district court should consider dismissal of pleadings without prejudice, "a district court need not as a matter of course dismiss a complaint without prejudice to an attempted amendment of the pleadings."). Accordingly, because allowing the Plaintiff an opportunity to re-file his civil RICO claim would be futile, I respectfully recommend that the Plaintiff's civil RICO cause of action should be dismissed with prejudice. See Foman v. Davis, 371 U.S. 178. 182 (1962) (emphasizing that leave to amend pleadings can be denied upon showing of futility of amendment).

  2.  State Law Claims

Plaintiff's remaining causes of action for unjust enrichment, "tortuous interference (sic)," conspiracy, fraud, and emotional distress, – Counts Two through Six in the Complaint – which appear to be state common law claims, can only be heard in this Court under its grant of diversity jurisdiction, 28 U.S.C. §1332, or supplemental jurisdiction, 28 U.S.C. §1367.[3]

---

[3] Because I have recommended that the Plaintiff's allegations of a civil RICO claim fail to state a claim and that this claim should be dismissed with prejudice, it does not appear appropriate in this instance to retain jurisdiction over these remaining state law claims under the Court's grant of supplemental jurisdiction in the absence of any other federal constitutional or statutory claim. See Cave, 514 F.3d at 250.

Contrary to the Plaintiff's assertion in his Complaint that the rule of complete diversity among all plaintiffs and all defendants is flexible depending on the circumstances of the case, see Comp. at ¶6 (citing Raftery v. Scott, 756 F.2d 335 (4th Cir. 1985)), complete diversity among all plaintiffs and all defendants remains the binding interpretation of the federal diversity jurisdiction statute, 28 U.S.C. §1332(a)(1).  See Handelsman v. Bedford Village Assocs., 213 F.3d 48, 51 (2d Cir. 2000) (citing, *inter alia*, Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998) ("A case falls within the federal court's original diversity jurisdiction only if diversity of citizenship among all of the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State.")).

In this case, Plaintiff and Defendant Carl Mariuz, along with Mariuz Property Management and RBTK of the Hudson, are each alleged to be residents of New York, thus divesting this Court of proper subject matter jurisdiction under §1332(a)(1).  See Comp. at ¶¶1, 2.  Thus, in light of the similar state residency shared by the Plaintiff and Defendant Carl Mariuz and the business entities Plaintiff maintains that Defendant Carl Mariuz controls, I respectfully recommend that the Court lacks valid diversity jurisdiction over the Plaintiff's state law causes of action and that these claims must be dismissed pursuant to Rule 12(b)(1).

## **CONCLUSION**

For the aforementioned reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's civil RICO claim fails to state a claim for relief and should be dismissed with prejudice and that the Plaintiff's remaining state law claims cannot be heard in this court due to a lack of proper subject matter jurisdiction.  In the absence of any surviving federal claim, this Court should not exercise supplemental jurisdiction over any of the state law

claims. I therefore conclude, and respectfully recommend that Your Honor should conclude, that the Defendants' motion to dismiss should be granted that the Plaintiff's Complaint should be dismissed in its entirety.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(e), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: April 4, 2008
White Plains, New York

Respectfully Submitted,

_____
Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.
*Pro se* Plaintiff Joseph Sheridan and *pro se* Defendants Carl Mariuz and Patricia Mariuz

18